IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW NAPPER,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case #: 2:09-cv-00928<br>Judge David Stewart Cercone/<br>Chief Magistrate Judge Amy Reynolds Hay |

**REPORT AND RECOMMENDATION**

**Recommendation**

Plaintiff, Andrew Napper ("Napper" or "the claimant"), brought this action under 42 U.S.C. § 405(g), seeking review of the Social Security Commissioner's final decision disallowing his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f. Cross-motions for summary judgment are presently before the Court. For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and the claimant's motion be denied.

**Report**

**Background**

The claimant filed an application for SSI disability benefits on August 8, 2006, alleging an onset date of June 1, 2000, due to chronic back pain (Tr. 100). His claims were denied at the initial level of review and on March 20, 2007, the claimant requested a hearing before an administrative law judge ("ALJ") (Tr. 64-67, 68-69).

A hearing was held on July 24, 2008, at which time the claimant, who was represented by counsel, and a vocational expert ("VE") were called to testify (Tr. 15-54). The ALJ issued a decision on September 3, 2008, finding that despite the claimant's limitations he

had the ability to perform a number of sedentary jobs that existed in significant numbers in the national economy (Tr. 6-14). The Appeals Council denied Napper's request for review on June 25, 2009, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4).

**The ALJ's Decision**

The ALJ utilized the familiar five-step evaluation process articulated at 20 C.F.R. §§ 416.920(a) to determine disability eligibility and concluded that the claimant was not disabled at the fifth step.[1] In particular, the ALJ found that, although the claimant had several severe back impairments, resulting in three surgeries between June of 2007 and June of 2008, he had the residual functional capacity ("RFC") to perform sedentary work with the additional limitations of not lifting or carrying more than ten pounds; bending, stooping, crouching, climbing and walking only occasionally; limited pushing and pulling in his upper and lower extremities; a sit/stand option at his discretion; and being able to walk with the assistance of a cane (Tr. 11, 12).[2] In so finding, the ALJ not only gave "greater weight" to the opinion of the claimant's treating surgeon but also considered the claimant's subjective reports of pain as well as his other symptoms (Tr. 12-13).

Although the ALJ found that the claimant is unable to perform any past relevant work and that his ability to perform a full range of sedentary work was impeded by these

---

[1]The five step analysis requires the Commissioner to consider, in sequence, the following: (1) If the claimant is performing substantial gainful work, he is not disabled; (2) If the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled; (3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled; (5) Even if the claimant's impairment or impairments prevent him from performing his past work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

[2]RFC refers to what a claimant is able to do despite his or her limitations. 20 C.F.R. § 416.945(a).

additional limitations, she also found, based on the testimony of the VE, that the claimant was capable of performing the requirements of jobs such as an alarm monitor, ticket checker and cashier, all of which exist in substantial numbers nationwide (Tr. 14). The ALJ, therefore, concluded that the claimant was not disabled as defined under the Act.

**Standard of Review**

In reviewing the administrative determination by the Commissioner, the question before the court is whether the Commissioner's decision is supported by substantial evidence. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Id., quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999). Where the ALJ's findings are supported by substantial evidence, the court is bound by those findings, even if it would have decided the factual inquiry differently. Id.

**Discussion**

Although Napper claims that he has been disable since June of 2000, the earliest medical evidence of record is from November of 2006, at which time Napper was examined by Michael Vogini, D.O., a consulting physician (Tr. 135-42). Dr. Vogini diagnosed Napper with a lumbosacral sprain and strain, chronic in nature finding that, although Napper had decreased forward and backward bending, and tenderness in the palpitation of the paraspinal muscles, his motor strength was still 4/5 bilaterally in both lower extremities and 5/5 in upper extremities with no loss of sensation or atrophy (Tr. 136, 137, 138-39). Dr. Vogini also noted that Napper could occasionally lift and carry 10 pounds; could stand/walk for one hour, and sit for eight hours (with alternating sit/stand option) in an eight hour day; was limited in pushing and pulling in the lower extremity; and could occasionally bend, kneel, stoop, crouch, balance and climb (Tr. 140-41).

In January 2007, state agency physician, Juan B. Mari-Mayano, M.D., conducted an RFC assessment (Tr. 143-49). After reviewing the evidence, Dr. Mari-Mayano found that Napper could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; could stand/walk for six hours, and sit for six hours, in an eight hour day; and was unlimited in pushing and pulling (Tr. 143-49). Dr. Mari-Mayano's primary diagnosis was lumbar sprain (Tr. 143, 148). He also indicated that Napper's subjective complaints were only partially credible as not supported by the totality of the evidence noting that, at the time, Napper had never received treatment from a specialist, did not attend physical therapy, did not require an assistive device to ambulate, and did not use a "Tens unit" (Tr. 148).

Napper was first seen by a specialist in December of 2006. Michael Casey, M.D., an orthopaedist, reported that Napper complained of what appeared to be benign low back pain with some pain down the right leg to the thigh (Tr. 308). On examination, Napper exhibited pain with both flexation and extension of his spine with moderate limitation of motion; was negative for straight leg raising; and had painless range of motion of both hips (Tr. 308). X-rays showed moderate disc space narrowing of the L5-S1 (Tr. 308). Dr. Casey diagnosed Napper with degenerative disc disease and prescribed a three week physical therapy program, an aerobic exercise program, and advised discontinuation of cigarette smoking (Tr. 308).

Napper was scheduled to receive outpatient physical therapy services from UPMC St. Margaret in January and February 2007, but cancelled nine times and attended only five sessions including one in which he could not fully participate because he had been "moving furniture around the house" (Tr. 159-61, 231-32). Then, on February 23rd, UPMC's Outpatient Progress Notes show that Napper reported that his pain specialist told him to discontinue physical therapy altogether (Tr. 232).

An Employability Re-Assessment Form dated January 25, 2007, indicates that Napper was temporarily disabled from January 25, 2007 through April 25, 2007, because of back pain (Tr. 157-58).

Napper was treated for his back pain by Nashaat Rizk, M.D., at UPMC St. Margaret from January 2007 to April 2007 (Tr. 243-64). Napper received three epidural steroid injections during that time, the first being in January (Tr. 243-46, 250-51). In February, 2007, prior to the second injection, Dr. Rizk reported that Napper was able to rise right away from a seated position without assistance; had no sensation deficits and full range of motion of upper and lower extremities; and had a normal and intact gait (Tr. 257-58). Dr. Rizk's examination of Napper in April 2007, prior to the third injection, revealed that although Napper had some minor paravertebral tenderness in the lumbar region and had positive straight leg raise test, he exhibited no overt pain behaviors; his upper and lower extremity strength was 5/5; and his sensation and gait were intact (Tr. 248). Dr. Rizk also noted that Napper was able to cut the grass and do light housework (Tr. 248).

Napper saw Dr. Casey again in May of 2007 (Tr. 306-07). Dr. Casey described Napper's pain on his previous visit in December of 2006 as "relatively benign," and indicated that although he complained of back pain and bilateral leg pain (primarily right leg), he had no motor deficit and was negative for straight leg raising (Tr. 306-07). Dr. Casey noted that an MRI and a myeloCT revealed mild multiple level spinal stenosis but no obvious disc herniation (Tr. 306-07). Dr. Casey recommended a lumbar laminectomy and a discectomy which were performed in early June 2007 (Tr. 172-73).

Prior to surgery, it was reported that Napper had a normal gait, somewhat decreased range of motion, but no back pain upon palpation (Tr. 175). Dr. Casey performed a lumbar laminectomy at L5 and reported that there appeared to be good decompression at the

L5-S1 level (Tr. 172). He also performed a discectomy of the L5-S1 on the right side, and noted excellent decompression of the S1 nerve root (Tr. 172). Napper was discharged from the hospital the next day, and physical assessment notes indicated that he was able to make major and frequent changes in position independently (Tr. 182, 190).

Napper returned to Dr. Casey for a follow-up visit on July 18, 2007, at which time Dr. Casey reported that Napper had satisfactory resolution of his leg and back pain;[3] that Napper's back wound was healed; and that he was negative for straight leg raising (Tr. 304). Dr. Casey cleared Napper to return to work in a light duty capacity (Tr. 304).

Napper, however, returned to Dr. Casey in November of 2007, with complaints of neck pain on the right side and right arm pain and weakness (Tr. 300-01). An MRI revealed a disc protrusion at the right side at the C6-7 level (Tr. 300). Dr. Casey consequently recommended a discectomy and fusion (Tr. 300) which he performed later that month along with bank fibular graft and an anterior cervical plating at C6-C7 (Tr. 223-24). On December 12, 2007, Napper returned for a follow-up appointment complaining of a recent onset of pain in his left arm (Tr. 299). Dr. Casey determined that Napper's "[m]ild neurogenic symptoms" were likely due to inflammatory response that appeared to be resolving and indicated that Napper's surgical wound was healing well and that his biceps and triceps were functioning in both upper extremities (Tr. 299). Dr. Casey prescribed some pain medication and recommended therapy to strengthen Napper's arms and neck (Tr. 299).

In January 2008, Napper again saw Dr. Casey complaining of right arm pain and displaying right biceps weakness (Tr. 298). Dr. Casey requested a myeloCT of the cervical spine which did not show a significant pathology at any level of the cervical spine; he recommended an EMG and nerve conduction study (Tr. 297). In February 2008, Dr. Casey noted mild intrinsic

---

[3] In fact, Napper testified at the hearing that the lumbar laminectomy was successful (Tr. 23).

weakness and indicated that the EMG and nerve study showed evidence of a right sided C8 radiculopathy (Tr. 296). Dr. Casey also opined that, although he previously suspected that Napper's pain symptoms were coming from 5-6, he now believed they were coming from the C7-T1 level (Tr. 296).

On February 22, 2008, Napper met with Edward Heres, M.D., from UPMC Pain Medicine at Centre Commons (Tr. 285-87), who noted that Napper had a history of cramping pain in the right upper extremity which began after a slip and fall accident in October 2006 (Tr. 285). Dr. Heres reported that Napper had moderate limitation of cervical range of motion although a motor examination revealed strength to be 5/5 throughout and Napper had no tenderness in the cervical spine (Tr. 285). Dr. Heres gave Napper an epidural steroid injection (Tr. 286). At a follow-up appointment with Dr. Casey shortly thereafter, it was reported that Napper had moderate improvement and resolution of his right arm pain following the injection and that Napper's intrinsic strength appeared normal in the right upper extremity (Tr. 295).

Napper returned to Dr. Heres at UPMC Pain Medicine on March 14, 2008 (Tr. 283-84). Dr. Heres indicated that Napper had a significant amount of relief from his neck and right shoulder pain since his February 2008 epidural injection and that, although there was some soreness around his right neck and shoulder, the pins and tingling sensation had essentially gone away (Tr. 283). Dr. Heres also reported that Napper had full range of motion and functional strength (Tr. 283). Dr. Casey, with whom Napper met on March 26, 2008, also indicated that Napper had good resolution of his right arm symptoms (Tr. 294). Dr. Casey noted that Napper's current complaint was now that of low back pain on occasions when he tried to perform demolition work (Tr. 294). Although Dr. Casey was of the opinion that Napper was not likely to be able to return to that type of work, he reported that Napper could return to light duty work (Tr. 294).

Napper returned to Dr. Casey at the end of April, 2008, reporting pain on the left side of his neck and left shoulder which Dr. Casey noted appeared similar to symptoms he previously had on the right side which "resolved with time and conservative treatment" (Tr. 293). Dr. Casey noted no motor deficit except for mild biceps weakness in both upper extremities and prescribed physical therapy and corticosteroid medication (Tr. 293). Napper had follow-up appointments with Dr. Casey on May 7, 2008, and again on May 21, 2008, at which time Dr. Casey reported that Napper's pain was persistent but improved and that his biceps weakness was intact (Tr. 291-92). Dr. Casey ordered a new MRI (Tr. 291).

In the interim, on May 2, 2008, Napper also met with Dr. Heres, complaining of lower back pain that flared a month earlier after he was raking leaves and fell into a small ditch, twisting his lower back (Tr. 280). Dr. Heres noted that, although Napper had significant tenderness and spasms over the lumbar paraspinal muscles, he did not appear to be in acute distress and his gait was intact (Tr. 281). Finding that Napper's pain appeared to be muscular, he prescribed anti-inflammatory medication and a trigger point injection (Tr. 281).

On June 11, 2008, Dr. Casey reported that the MRI he had ordered showed a degenerative change and a left foraminal disc protrusion at C5-C6 and prescribed a discectomy and fusion at C5-C6 (Tr. 290, 354). On June 24, 2008, Dr. Casey performed an anterior cervical discectomy fusion at C5-C6 and plating C5-C7 (Tr. 310-11).

On July 9, 2008, Dr. Casey reported that Napper had shown a satisfactory resolution of the majority of arm symptoms, but still had some throbbing in the left shoulder and complains of posterior neck pain (Tr. 289). Dr. Casey noted that Napper's wound was well healed and that his left biceps and deltoid were intact (Tr. 289). Dr. Casey prescribed physical therapy for the strengthening of Napper's upper extremities and neck (Tr. 289).

This evidence, in the Court's view, amply supports the ALJ's findings that Napper was able to perform a range of sedentary work and, thus, is not disabled. While Napper clearly suffers from back impairments, the surgeries performed by Dr. Casey appear to have largely resolved his complaints of back and leg pain and that of his right arm and neck (Tr. 23, 304, 293, 294). Indeed, the medical evidence shows that following his first two surgeries, Napper was repeatedly negative for straight leg raises, had a full range of motion and functional strength and Dr. Casey expressly released him to light duty work (Tr. 175, 257-58, 281, 283, 294, 295, 304, 307-08, 329). Although it appears that Napper still has some residual pain in his left arm and neck following his last surgery, Dr. Casey reported that the post surgical follow-up was satisfactory and prescribed physical therapy to strengthen Napper's upper extremities and neck (Tr. 289). Coupled with Napper's acknowledgment that he cooks all of his own meals, is able to wash the dishes, make his bed, vacuum, sweep, mop, take out the trash, cut the grass and rake leaves, grocery shop, visits with friends, attends church on occasion, and that he uses public transportation wherever he goes (Tr. 31-32, 107-09, 280), it appears that he is capable of performing sedentary work with the additional limitations of not lifting or carrying more than ten pounds; bending, stooping, crouching, climbing and walking only occasionally; limited pushing and pulling in his upper and lower extremities; a sit/stand option at his discretion; and being able to walk with the assistance of a cane as found by the ALJ.

Napper nevertheless argues that the ALJ erred in failing to take into consideration that the number of days that Napper was unable to work in the preceding year or the effects of his complaints of pain and, thus, relied on an incomplete and improper RFC.

As previously discussed, RFC refers to what a claimant is able to do despite his or her limitations. 20 C.F.R. § 416.945(a). Determining a claimant's RFC is reserved to the Commissioner and must be based on all the relevant evidence including medical records and

medical opinions as well as the claimant's own description of his or her limitations. 20 C.F.R. §§ 416.927(e)(2)(3), 416.945(a).

In assessing Napper's RFC, the ALJ indicated that she carefully considered the entire record and not only gave greater weight to Napper's treating surgeon but gave "additional allowance for some degree of the claimant's subjective reports of pain" (Tr. 12). After evaluating the evidence, the ALJ determined that Napper indeed had severe impairments and certain functional limitations which required additional restrictions on even sedentary work, i.e., not lifting or carrying more than ten pounds; only occasionally bending, stooping, crouching, climbing and walking; limited pushing and pulling in his upper and lower extremities; a sit/stand option at his discretion; and being able to walk with the assistance of a cane (Tr. 12).

The ALJ's findings in this regard are amply supported by the record, including Dr. Casey's treatment records which, as previously pointed out, indicate that the first two surgeries resolved Napper's low back and leg pain and that of his right neck and arm and that he was able to perform light duty work (Tr. 304, 294). Although it appears that the third surgery did not completely resolve Napper's left neck and arm pain, Dr. Casey reported a satisfactory result (Tr. 289).

The ALJ's assessment also finds support in the opinions of Drs. Mari-Mayano and Vogini, who placed even fewer restrictions in their RFC assessments than the ALJ. Specifically, Dr. Mari-Mayano determined that he could occasionally lift and carry 20 pounds; frequently lift and carry ten pounds; could stand/walk for six hours, and sit for six hours, in an eight hour day; and was unlimited in pushing and pulling (Tr. 143-49). Similarly, Dr. Vogini found that Napper could occasionally lift and carry 10 pounds; could stand/walk for one hour, and sit for eight hours (with alternating sit/stand option), in an eight hour day; was limited in pushing and pulling in the

lower extremity; and could occasionally bend, kneel, stoop, crouch, balance and climb (Tr. 140-41).

Notably, Napper has not pointed to any medical evidence or medical opinions that suggest a contrary finding or that otherwise suggest that he is unable to perform sedentary work with additional restrictions to accommodate his impairments.

Moreover, Napper's own description of his activities of daily living support the ALJ's RFC assessment. Indeed, as previously discussed and as pointed out by the ALJ, Napper acknowledged that he cooks all of his own meals, is able to wash the dishes, make his bed, vacuum, sweep, mop, take out the trash, cut the grass and rake leaves, grocery shop, visit with friends and attend church on occasion, and that he uses public transportation wherever he goes (Tr. 31-32, 107-09, 280).

Although Napper argues that the ALJ's description of his daily activities is inaccurate he does not suggest how it is inaccurate except to argue that the ALJ confined him to "Yes or no" answers when he attempted to explain that he did only what he could, and that the ALJ's finding that he took a 30 minute walk every day is somehow belied by the record because he only went 1 or 1½ blocks. The record shows, however, that the ALJ asked Napper to give a "Yes or no" answer only once – without objection from counsel – when he asked him if he cooked (Tr. 31). Given Napper's indication elsewhere that he cooks all his own meals, his response and the ALJ's finding that he cooks can hardly be considered inaccurate (Tr. 107). Moreover, contrary to Napper's suggestion, he was clearly able to respond freely to the ALJ's other questions indicating that he "sometimes" vacuums and sweep, that he takes out the trash "some" or "not a lot," and that he "do[es] what [he] can" in the yard (Tr. 31). As well, while walking one or two blocks in thirty minutes is certainly not a lot, Napper nevertheless testified that he walks for about thirty minutes (Tr. 34).

Napper also complains that the ALJ "ignored the inordinate number of days of work missed by him during the 13 months prior to the hearing" because of his back condition and surgeries, noting that he was only able to work five months between June of 2007 and June of 2008. Pl. Brief, pp. 19-20. As argued by the Commissioner, however, in order to be found disabled under the Act, a claimant must have a disabling impairment that has lasted or be expected to last twelve consecutive months. 20 C.F.R. § 416.905(a). See Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). Because, by his own admission, Napper was able to work five of the preceding 12 months, a finding of disabled based on the time he was unable to work because of his surgeries is precluded. Moreover, Napper's inability to work for seven months between June of 2007 and June of 2008 because of his surgeries does not speak to his ability to work in the future, especially having had successful surgeries, or to his RFC during the entire relevant time period.[4] 20 C.F.R. § 416.945(a).

Finally, with respect to Napper's assertion that the ALJ failed to adequately and accurately consider the effects of his complaints of pain, the record is to the contrary.

Although the ALJ is required to consider a claimant's subjective complaints, it is within his or her discretion to reject those complaints when not supported by the medical evidence. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). See 20 C.F.R. § 416.929. A claimant's allegations alone will not establish that he is disabled. 20 C.F.R. § 416.929(a). In considering the claimant's subjective complaints, the ALJ is required to first determine whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. If such evidence exists then the ALJ must then evaluate the intensity and persistence of the pain and other symptoms to determine the

---

[4]As argued by the Commissioner, the time period relevant to Napper's application is between July 31, 2006, the first month following the date on which he filed his SSI application, and September 3, 2008, the date of the ALJ's decision. See 20 C.F.R. §§ 416.501, 416.330.

extent to which they affect the claimant's ability to do basic work activity. 20 C.F.R. § 416.929(b)-(c). See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Further, it is up to the ALJ to assess whether the claimant's testimony regarding his or her limitations is credible and any determination regarding credibility should be accorded great weight and deference. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003); Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

In the instant case, the ALJ fully considered Napper's subjective complaints in accordance with the regulations and found that, although his medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, Napper's statements concerning intensity, persistence and limiting effects were not entirely credible based on the other evidence of record. In particular, the ALJ cited to the fact that Napper testified that he is able to perform a wide range of activities including cooking, washing dishes, making his bed, vacuuming, sweeping, occasionally taking out the trash and mopping, going to the grocery store once a week, taking walks and visiting friends and attending church on occasion (Tr. 13). As well, the ALJ referred to the fact that on his daily activity questionnaire, Napper indicated that he is independent in his personal care; that he takes public transportation to go wherever he needs to go; and that he does some grass cutting (Tr. 13). Indeed, three months before the hearing Napper was raking leaves (Tr. 31, 107, 280). Because this evidence regarding Napper's activities appears to be inconsistent with his claims of disabling pain, the ALJ properly found those complaints to be only partially credible. See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002).

Napper, however, categorizes the daily activities cited by the ALJ as "sporadic and transitory" and, citing to Fargnoli v. Massanari, 247 F.3d at 40, and Schwartz v. Halter, 134 F. Supp. 2d 640, 654 n.13 (E.D. Pa. 2001), argues that under Third Circuit case law, his daily

activities cannot provide the basis for finding that he is able to engage in substantial gainful activity. These cases, however, are easily distinguishable from the instant case. In Schwartz, for instance, the Court remanded the case to the ALJ because his explanation for rejecting the claimant's allegations of pain were inadequate in light of the fact that there was evidence of record that supported the claimant's allegations which the ALJ failed to discuss, as well as evidence that did not appear to support the ALJ's conclusion. As an example of the latter, the Court, in a footnote, cited to the ALJ's categorization of the claimant's activities of going shopping with his wife, visiting his mother twice a week and driving his car every day as "an impressive list of activities" for an individual who claims the inability to work. The Court then pointed out that these activities are consistent with the allegations of pain by both the claimant and his treating physician and, thus, admonished the ALJ for not explaining how these limited activities persuaded him that Schwartz could sit, stand, or walk for a longer period than he said he could.

Here, however, not only is the list of Napper's daily activities far more extensive than that cited in Schwartz, but the ALJ's findings are consistent with Napper's treating surgeon, who, as the ALJ discussed, found that Napper was able to return to light work. The ALJ also found Napper's subjective complaints somewhat suspect noting that, although Napper testified that he could only sit for about fifteen minutes, he had already been sitting at the hearing for thirty-five minutes when he made the claim (Tr. 13). The ALJ also pointed to Napper's poor work history over the past thirty years finding it unfavorable to his assertions that he is only now unable to work (Tr. 13).[5] Moreover, there is an absence of objective medical diagnostic findings

---

[5]Specifically, the ALJ noted that in the last thirty years, Napper had only twenty-three quarters of earnings, or less than six years of overall employment (Tr. 13, 90-95). Indeed, the record shows that in the seventeen years between graduating from high school and 2000, when he claims he became disabled, Napper earned income in only seven years and earned $300.00 or less in four of those (Tr. 90-95).

to support Napper's claims of pain, unlike in Schwartz. Thus, not only is Schwartz factually distinguishable from the instant case but, unlike in Schwartz, the ALJ adequately supported his conclusion regarding Napper's credibility.

Similarly, in Fargnoli, the Court remanded the case because, unlike here, the ALJ failed to evaluate all the evidence and failed to explain his assessment of the claimant's credibility. In a footnote, the Court also addressed the claimant's argument that the ALJ improperly relied on the fact that he took a trip to Europe in 1988, eight years before the ALJ issued his decision, as evidence that he could perform light work. Fargnoli, 247 F.3d at 40, n.5. The Court agreed, finding that sporadic and transitory activities such as taking a trip cannot be the basis for finding the capability of doing light work. Id. In this case, however, not only are the activities cited by the ALJ far more extensive than taking a single trip but, as previously discussed, the ALJ has adequately explained the basis for his assessment of Napper's credibility and his ability to engage in light work.

In addition, the medical evidence appears to undermine Napper's subjective complaints of pain. As previously discussed, Dr. Casey, Napper's treating surgeon whose opinion the ALJ accorded great weight, reported that the lumbar laminectomy performed in June of 2007, successfully resolved Napper's back and leg pain (Tr. 23, 304), and that his complaints of right neck and arm pain were resolved by the surgery in November of 2007, allowing him to be cleared for light duty work both times (Tr. 294, 304). Indeed, medical records from February and March 2008 show that Napper had full range of motion and functional strength with no evidence of atrophy or weakness (Tr. 283, 329). Dr. Casey also reported a "satisfactory" follow-up after Napper's third surgery requiring no more than physical therapy to strengthen his neck and upper extremities (Tr. 289).

Further, the clinical findings and RFC assessments made by both Drs. Mari-Mayano and Vogini were inconsistent with Napper's subjective complaints of pain. Indeed, Dr. Mari-Mayano found that Napper could occasionally lift and carry 20 pounds and frequently lift and carry ten pounds; could stand/walk for six hours, and sit for six hours, in an eight hour day; and was unlimited in pushing and pulling (Tr. 143-49); Dr. Vogini found that Napper could occasionally lift and carry 10 pounds; could stand/walk for one hour, and sit for eight hours (with alternating sit/stand option), in an eight hour day; was limited in pushing and pulling in the lower extremity; and could occasionally bend, kneel, stoop, crouch, balance and climb (Tr. 140-41). Notably, Mari-Mayano indicated that Napper's subjective complaints were only partially credible as not supported by the totality of the evidence as well (Tr. 148).

Under these circumstances, it appears that substantial evidence supports the ALJ's conclusion that Napper's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible, as well as the ALJ's RFC assessment. See Hartranft v. Apfel, 181 F.3d at 362 (Finding that the ALJ's determination that the claimant's subjective complaints were exaggerated was supported by substantial evidence where they were inconsistent with objective medical evidence and the claimant's own description of daily activities).

**Conclusion**

As found by the ALJ, there is little doubt that the claimant suffers from severe back impairments and has been in pain from those impairments as well as from the three surgeries he had between June of 2007 and June of 2008. The evidence shows, however, that those surgeries were largely successful and that his continued complaints of disabling pain are not supported by the medical evidence. Taking the medical evidence into consideration, particularly the opinion of Napper's treating surgeon, the claimant's daily activities, as well as the claimant's complaints of pain, the ALJ adequately accounted for Napper's impairments in

arriving at the RFC and in questioning the VE. The ALJ's conclusion that Napper is capable of making a successful adjustment to work that exists in significant numbers in the national economy is therefore supported by substantial evidence and, accordingly, it is recommended that Commissioner's Motion for Summary Judgment [Dkt. 13] be granted, and the claimant's Motion for Summary Judgment [Dkt. 9] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

*/ s/ Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 27 April, 2010

cc: All counsel of record by Notice of Electronic Filing